UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALLSTATE INSURANCE COMPANY, *et al.*,

                    Plaintiffs,

        -against-

ALEKSANDR GULKAROV, *et al.*,

                  Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22 CV 2219 (EK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

        On April 19, 2022, plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company (collectively, "Allstate" or "plaintiffs") commenced this action against defendants Aleksandr Gulkarov, Roman Israilov, Azu Ajudua, f/k/a "Azu Ajudua, M.D.," Rolando Jose Mendez Chumaceiro, M.D., Vyacheslav Mushyakov, and Arkadiy Khaimov (collectively, "defendants"), alleging that defendants had breached a confidential settlement agreement that they had entered into with Allstate to settle an action captioned Allstate Insurance Company, *et al.* v. Hollis Novel Comprehensive Medical, P.C., *et al.*, Docket No. 20 CV 6108, and assigned to the Honorable Eric Vitaliano (the "Original Action"). Jurisdiction is based on 28 U.S.C. § 1332, in that all of the Allstate entities are of diverse citizenship from each of the defendants and the amount in controversy exceeds $75,000. (Compl.[1] ¶ 22).

        Currently pending before this Court on referral from the Honorable Eric Komitee is plaintiffs' motion for default judgment against the defendants. For the reasons set forth below,

---

[1] Citations to "Compl." refer to plaintiffs' Complaint and Demand for Jury Trial, filed April 19, 2022, ECF No. 1.

the Court respectfully recommends that a default judgment enter against the defendants, who are jointly and severally liable, in the amount of $281,250.00.

## FACTUAL AND PROCEDURAL BACKGROUND

The Original Action, which was commenced on December 16, 2020, alleged a complex scheme to defraud, in which licensed physicians, including defendants Ajudua and Chumaceiro, allegedly partnered with various laypersons, including defendants Gulkarov and Israilov, to organize and operate several purported physician-owned professional corporations under the medical license of the physicians. (Or. Compl.[2] ¶¶ 1-3). The Original Complaint alleges that defendants engaged in the illegal corporate practice of medicine in violation of New York law, because professional medical corporations may not be "owned, operated, and controlled by laypersons who are not licensed or authorized to practice medicine or derive financial benefit from the delivery of professional medical services." (Id. ¶¶ 4-5). Defendants used the professional corporations to bill for tests and treatments that were medically unnecessary and prescribed medications that were medically unnecessary. (Id. ¶ 12). Also, as part of the scheme, the prescriptions were directed to pharmacies under defendants' control. (Id. ¶ 14). Defendants Mushyakov and Khaimov were alleged to be registered owners of certain pharmacies that were actually controlled by defendant Gulkarov and another and that participated in the scheme. (Id. ¶ 16).

According to the Complaint in the Original Action, defendants sought and collected No Fault benefits directly from Allstate. (Id. ¶¶ 22-26). Allstate alleged that in making those payments, it relied on the bills and records submitted by defendants, which defendants knew were false and fraudulent. (Id. ¶¶ 28-31). The Original Complaint sought damages based on

---

[2] Citations to "Or. Compl." refer to the Complaint filed in the Original Action, entitled Allstate Insurance Company v. Hollis Novel Comprehensive Medical, P.C., Dkt. No. 20 CV 6108, ECF No. 1.

2

claims of RICO, common law fraud, and unjust enrichment. (Id. ¶¶ 32-33).

According to the allegations in the case currently pending before this Court, Allstate alleges that it agreed with the defendants to resolve the Original Action and entered into a settlement agreement ("Agreement") that became effective on October 22, 2021. (Compl. ¶ 26). Pursuant to the Agreement, plaintiffs agreed to dismiss the Original Action and the case was closed on October 25, 2021. (Id. ¶ 27). Under the terms of the Agreement, defendants agreed they were jointly and severally liable, and agreed to pay Allstate the sum of $225,000. (Id. ¶¶ 29, 32). Upon execution of the Agreement, defendants agreed to pay an initial amount of $75,000, with the remaining $150,000 payable through monthly installments of $12,500, due the first day of each month beginning on November 1, 2021. (Id. ¶¶ 30-31).

Plaintiffs allege that although defendants tendered the initial payment of $75,000 and then made installment payments which were due November 1, 2021, December 1, 2021, and January 1, 2022, they breached the Agreement by failing to render the additional payments due under the terms of the Agreement. (Id. ¶¶ 35-37). Specifically, defendants failed to pay the $12,500 that was due on February 1, 2022, and have failed to make any other payments since then. (Id. ¶¶ 37-38, 46). Under the terms of the Agreement, timely payment of the monthly installment is considered a material term, and defendants' failure to pay the February 2022 installment constitutes a breach of the Agreement. (Id. ¶¶ 39, 40).

Under the Agreement, plaintiffs were required to serve written notice of the breach upon defendants, which Allstate did on February 28, 2022. (Id. ¶¶ 41-42; Ex. B). Since defendants failed to cure the breach within ten calendar days, and have failed to tender any payment since that time, Allstate now brings this action, alleging breach of contract. (Id. ¶¶ 56-63). Allstate seeks damages in the amount of $112,500.00, which is the remaining amount owed under the

3

Agreement, plus liquidated damages in the amount of 150% of that amount, as set forth in the Agreement, which amounts to $168,750.00, for a total of $281,250.00. (Pls.' Mem.[3] at 12). In addition, Allstate requests the opportunity to submit additional briefing in support of its application for interest, fees and costs. (Id. at 12, n.6).

By Orders dated October 31, 2022, November 15, 2022, and November 29, 2022, the Court provided defendants an opportunity to request a hearing on damages and to submit any documents in response to plaintiffs' motion. (See ECF Nos. 35, 38; Electronic Order, dated Nov. 29, 2022). Defendants did not respond by the deadlines.[4]

## DISCUSSION

I. Default Judgment

    A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

---

[3] Citations to "Pls.' Mem." refer to the plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, filed July 22, 2022. (See ECF No. 34-1).

[4] In its October 31, 2022 Order, the Court originally set a deadline of November 14, 2022 for defendants to request a hearing. (See ECF No. 35). In that same Order, the Court Ordered plaintiffs to serve a copy of said Order on defendants and to file proof of service on the docket. (Id.) Thereafter, despite some issues regarding completion of service of the Court's Order on defendants (see ECF Nos. 36-44), the Court now finds that all defendants had been served a copy of the October 31, 2022 Order by December 10, 2022. (See ECF Nos. 45-46). Defendants were given two weeks after they have been served to file any requests for an inquest hearing and any papers in response to plaintiffs' motion for default judgment. (See ECF No. 38).

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant on notice; and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that

5

accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages). Additionally, the court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 62 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2685 (4th ed.).

Here, it is beyond dispute that defendants are in default. Defendants have not responded to the Complaint, nor have defendants even appeared in this action by counsel. Moreover, despite proper service, defendants have not only failed to file an Answer or otherwise move with respect to the Complaint, but defendants have also failed to respond either to plaintiffs' Motion for a Default Judgment or to the Order from this Court relating to the calculation of damages. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Thus, plaintiffs' evidence on liability and damages is undisputed.

Here, defendants' failure to appear in this action or respond to the Complaint and Motion for a Default Judgment warrants the entry of default judgment.

 B. Plaintiffs' Claims

  1) Breach of Contract

Plaintiffs' Complaint clearly sets forth facts, which, if true, establish plaintiffs' claim that defendants breached the terms of the Settlement Agreement by failing to make the required installment payments. Given that a "settlement agreement is a contract that is interpreted according to general principles of contract law," the Court looks to the elements of a breach of

6

contract claim under New York law. Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).

It is well-established under New York law that a party alleging an action for breach of contract must prove the following: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)).

Plaintiffs have alleged the first element – the existence of a contract – in that the defendants each entered into a Settlement Agreement on October 22, 2021, whereby Allstate agreed to resolve the claims in the Original Action and dismiss those claims in return for defendants' agreement to pay damages in the amount of $225,000.00. (Compl. ¶¶ 29-31). Plaintiffs further allege that they complied with their obligation under the Settlement Agreement by dismissing the Original Action, and then, when defendants defaulted, by providing written notice of the default with respect to the February payment and giving defendants ten days to cure. (Id. ¶¶ 27, 41-43). Plaintiffs further allege a breach on the part of the defendants; while the defendants tendered the initial payment of $75,000 and thereafter made additional payments totaling $37,500, defendants failed to pay the amount due on February 1, 2022 (the "February payment"). (Id. ¶¶ 36-38). According to the Complaint, defendants failed to cure and have failed to make any further installment payments as provided for by the Settlement Agreement. (Id. ¶¶ 44-45). Under the Agreement, upon a default, Allstate may "accelerate payment of the entire remaining settlement balance" and proceed to collect the remainder from the defendants. (Id. ¶ 49, Ex. A ¶ II.A). Finally, plaintiffs have alleged that they have been damaged by

7

defendants' breach in that there is currently $112,500.00 remaining as the unpaid amount due under the Agreement. (Id. ¶ 50).

In support of these allegations, plaintiffs have provided the Declaration of Michael Flaherty, a Special Investigation Unit Field Analyst for Allstate, who reviewed and provided copies of the relevant documents. (Flaherty Decl.[5]). Among the documents attached to the Flaherty Declaration are copies of the Stipulation of Dismissal in the Original Action (Ex. 2), a chart showing the payments made to Allstate prior to the default (Ex. 9), the Certificates of Service on each of the defendants (Exs. 3-8,[6] 12-17), and the certificates of default entered against each defendant. (Exs. 18-23).

Having considered the plaintiffs' submissions, the Court finds that plaintiffs have adequately pleaded the elements necessary to state a breach of contract claim. These "uncontroverted allegations, without more, establish the defendant[s'] liability on the asserted cause of action." Allstate Ins. Co. v. Tapper, No. 14 CV 5410, 2015 WL 6869702, at *5 (E.D.N.Y. Nov. 9, 2015) (quoting Mateo v. Universal Language Corp., No. 13 CV 2495, 2015 WL 5655689, at *4 (E.D.N.Y. Sept. 4, 2015)). Accordingly, it is respectfully recommended that a default judgment enter against each of the defendants.

### 2) Joint and Several Liability

Under the Agreement, the defendants agreed to be jointly and severally liable for the entire amount owed, subject to the limitation that defendants' personal liability would be limited

---

[5] Citations to "Flaherty Decl." refer to the Declaration of Michael Flaherty, attached as Exhibit A to Plaintiffs' Motion for Default Judgment, filed July 22, 2022. (ECF No. 34-2).

[6] Exhibits 3-8 to the Flaherty Declaration are Certificates of Military Service from the Department of Defense Manpower Data Center as to each of defendants, demonstrating that, pursuant to 50 U.S.C. § 521(b), Allstate made an investigation into the status of each defendant and determined that none of them are currently serving in the United States military.

to the following amounts in the event of a default in payment of the remaining settlement amount after the initial payment:

| | |
|---|---|
| Aleksandr Gulkarov | $75,000.00 |
| Roman Israilov | $75,000.00 |
| Azu Ajudua, f/k/a "Azu Ajudua, M.D." | $50,000.00 |
| Rolando Jose Mendez Chumaceiro, M.D. | $50,000.00 |
| Vyacheslav Mushyakov | $75,000.00 |
| Arkadiy Khaimov | $75,000.00 |

(Ex. A, ¶ II.A.iv). According to the Agreement, Allstate "shall be permitted to recover any such amount(s) due and owing (including any liquidated damages due under Paragraph II.A.v) from [defendants], subject to the limitations." (Id.) Allstate contends that consistent with the terms of the Agreement, the defendants should be held jointly and severally liable for all the damages awarded in default. (Pls.' Mem. at 11 (citing NYKCool A.B. v. Pacific Fruit Inc., No. 10 CV 3867, 2010 WL 4812975, at *12 (S.D.N.Y. Nov. 24, 2010) (finding the question of whether contract obligations are joint, several, or joint and several is a "question of the parties' intent, as revealed by the language of their contract . . . as well as the surrounding circumstances, including the practical construction placed on the contract by the parties themselves, the interests of the parties, and the purposes sought to be accomplished at the time the contract was made") (quoting 12 Williston on Contracts § 36:2 (4th ed. 2010)))).

Here, because none of the defendants have appeared in this matter, and no one contests plaintiffs' interpretation of the plain language of the Agreement, the Court respectfully recommends that the defendants be held jointly and severally liable for any damages awarded, subject to the limitations of personal liability as set out in the Settlement Agreement. See

9

Phillips 66 Company v. TNT Petroleum, Inc., No. 15 CV 5938, 2017 WL 765884, at *8 (E.D.N.Y. Feb. 2, 2017) (finding defendants are jointly and severally liable according to the "clear terms" of the guaranties), report and recommendation adopted, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017); cf. Tobin v. Gluck, 137 F. Supp. 3d 278, 308-09 (E.D.N.Y. 2015) (finding that while a stipulation "expressly provides for joint and several liability" for certain claims, the "plain language" does not provide for joint and several liability for other claims).

II. Default Judgment Damages

    A. Legal Standard

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. Id.; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

    B. Contract Damages

10

Plaintiffs claim that there is an open balance of $112,500.00 owed by defendants under the Agreement. (Flaherty Decl. ¶ 46). According to plaintiffs, defendants tendered the initial down payment of $75,000.00, and then made three installment payments of $12,500 each for the months of November 1, 2021, December 1, 2021, and January 1, 2022. (Id. ¶¶ 33-34). Despite having been given proper written notice and an opportunity to cure under the Agreement, defendants have made no further payments pursuant to their obligation under the Agreement. (Id. ¶¶ 35-37). Subtracting the amounts that have been paid from the total amount agreed upon, plaintiffs seek damages in the amount of $112,500.00. (Id. ¶¶ 39-44).

Having considered plaintiffs' submissions and reviewed their calculations, which are uncontested and appear to be accurate, the Court finds that plaintiffs are entitled to recover contract damages in the amount of $112,500.00 for defendants' failure to pay in breach of the Settlement Agreement.

### C. Liquidated Damages

Plaintiffs also seek an award of liquidated damages which, under the Agreement, are to be calculated at 150% of the amount remaining under the Agreement at the time of the breach. (Ex. A, ¶ II.A.v). According to the Agreement, "any liquidated damages are to be paid in addition to the amount of the remaining settlement balance at the time of breach." (Id.) Taking 150% of the outstanding amount owed under the Agreement, plaintiffs seek an additional $168,750.00 in liquidated damages.

Having reviewed the terms of the Agreement and plaintiffs' calculations, it is respectfully recommended that plaintiffs be awarded an additional $168,750.00 in liquidated damages, plus the $112,500.00 owed in damages under the Agreement, for a total of $281,250.00, subject to the limits on personal liability for each defendant as explained in Section I.B.2.

D.  Interest Accrued

Plaintiffs also seek prejudgment interest on the damages awarded. Under New York State law, a prevailing party is entitled to prejudgment interest from the date that a breach of contract occurred until the date of final judgment. See N.Y. C.P.L.R. §§ 5001-5002. The law provides that interest shall be calculated at the non-compounded rate of 9% per annum. N.Y. C.P.L.R. § 5004. Here, Allstate's claims for breach of the Agreement arose on March 11, 2022, the day after the defendants' deadline to cure the breach that occurred when the February payment was not tendered. See Arch Ins. Co. v. Sky Materials Corp., No. 17 CV 2829, 2021 WL 966110, at *9 (E.D.N.Y. Jan. 29, 2021), report and recommendation adopted, 2021 WL 964948 (E.D.N.Y. Mar. 15, 2021).

While the Court respectfully recommends that plaintiffs be awarded both prejudgment and post-judgment interest, see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), plaintiffs have requested an opportunity to submit further briefing in support of the application for interest. (Pls.' Mem. at 12, n.6). In addition, plaintiffs also state in their Memorandum of Law that they are seeking fees and costs. (Id.) Since they have not submitted any legal authority for an award of attorneys' fees in this matter, nor have they submitted any documentation or even a calculation of the fees and costs that they are seeking, the Court respectfully recommends that plaintiffs' motion for an award of interest, fees and costs be reserved until plaintiffs submit the appropriate documentation.

CONCLUSION

Accordingly, for the reasons set forth above, it is respectfully recommended that defendants be held jointly and severally liable for their breach of the Settlement Agreement, and that plaintiffs be awarded damages in the amount of $281,250.00, consisting of $112,500.00 in

contract damages and $168,750.00 in liquidated damages as provided for in the Agreement, plus pre- and post-judgment interest to be determined once plaintiffs submit additional briefing and documentation. To the extent that plaintiffs have requested an award of fees and costs, the Court reserves decision at this time pending further submissions from plaintiffs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: January 4, 2023
      Brooklyn, New York

                                             /s/ Cheryl L. Pollak
                                             CHERYL L. POLLAK
                                             Chief United States Magistrate Judge
                                             Eastern District of New York